Lester Wilson, of Shreveport, for appellant.

House, Moses & Holmes, of Little Rock, Ark., and Hussey & Smith, of Shreveport, for appellee.

## RODGERS v. A & B PIPE & SUPPLY CO., Inc. *
### No. 5080.

Court of Appeal of Louisiana.
Second Circuit.
June 29, 1935.

TALIAFERRO, Judge.

Plaintiff brings this action in trover for the conversion by defendant of 15,840 feet of 2-inch used or secondhand pipe of an alleged value of $1,267.20; of 6,600 feet of 2½-inch used or secondhand pipe of the alleged value of $726; and of forty 2-inch gate valves of the alleged value of $200; or a total value of $2,193.20. The undisputed facts appear to be these:

The Altman-Rodgers Company, an Oklahoma corporation, of which plaintiff was president, was adjudged a bankrupt by the United States District Court for the Eastern District of Arkansas, on December 13, 1933. Among the assets listed on its

schedule of assets were four miles of 2-inch pipe and one and one-half miles of 2½-inch pipe, and "one lot of miscellaneous small equipment located at Lillie, Louisiana." The pipe was also at Lillie. At a sale by the trustee on March 14, 1934, of the assets of the bankrupt's estate, plaintiff became the purchaser of the entirety thereof. The piping and equipment are definitely mentioned in the sale. Before the inception of the bankruptcy proceedings and thereafter, this property was in the possession of one W. M. Smith, as watchman. When plaintiff went there to get the property, he discovered that it had all been removed, and Smith had disappeared. He learned that defendant's trucks had made several trips there and left loaded with the pipe. He then called at defendant's office in the city of Shreveport, La., and demanded delivery of the piping to him. Its officers admitted that they purchased for cash, from Smith, and brought to Shreveport, by truck, 6,000 feet of the 2½-inch pipe, and 7,500 feet of the 2-inch pipe. They denied getting any more of the property, and stated that they had sold that which they did get. No restitution was offered. This suit was then instituted.

Defendant admits that it thought the piping was owned by Altman-Rodgers Company, and dealt with Smith as its agent, but claims to have been ignorant of the fact that said company was at the time in bankruptcy. It avers that it is informed and believes that said piping was only appraised at $300 on the bankrupt's inventory, and that plaintiff purchased same for $100, and for these reasons its liability on any account cannot exceed $100. In the alternative, defendant contends that, should plaintiff recover judgment against it on any account, that it should have judgment in reconvention against plaintiff for cost of storing and taking care of the pipe had by it which, it is alleged, amounts to $200.

Defendant excepted to the petition on the ground that it did not set forth a cause or right of action. The exception was overruled. There was judgment for plaintiff ordering defendant to return to plaintiff the quantities of pipe admitted by it to have been purchased from Smith, or deliver to plaintiff an equivalent amount of used line pipe of a grade satisfactory to plaintiff, or, in default thereof, that defendant pay plaintiff $650 plus legal interest from judicial demand.

This appeal is prosecuted by defendant after unsuccessful application for rehearing. Answering the appeal, plaintiff complains of the insufficiency of the judgment, and prays that it be increased and amended so as to condemn defendant to return to him 15,840 feet of 2-inch pipe, 6,600 feet of 2½-inch pipe, and 40 gate valves and fittings, or, in default thereof, that appellant pay him $1,999.20.

By agreement, appearing in the court's minutes, a remittitur was entered whereby plaintiff's money demand was reduced to $1,995.

### Exception of No Cause, or Right of Action.

Appellant urges us to sustain this exception. Its counsel argues that as defendant purchased the pipe from Smith while Altman-Rodgers Company was in bankruptcy, but before date of sale of its assets to plaintiff, that the sale to plaintiff was never completed because the property was not then in the possession of the trustee and was not, and could not have been, delivered by him to plaintiff. In other words, that the trustee attempted to sell property he did not possess or control, but which, on the contrary, had passed into the possession of defendant. The petition sets up that on or about December 29, 1933, defendant took possession of and removed the 2-inch pipe from Lillie, Union parish, La., and on or about January 8, 1934, took possession of and removed the 2½-inch pipe and said valves, etc.

We think the exception without merit. The property in question was listed on the bankrupt's schedule of assets and was duly appraised. The trustee of a bankrupt's estate, upon his appointment and qualification, is vested by operation of law with the title of the bankrupt, as of the date of the adjudication in bankruptcy, of all his property, except such as may be exempt; and, in this case, such title was conveyed to plaintiff by the trustee. By virtue of the trustee's sale, after it was confirmed by the court, plaintiff's title to the property therein described and therein conveyed to him was as perfect as that held by the bankrupt prior to its surrender. USCA, title 11, Bankruptcy, § 110.

The filing of the bankrupt's petition is:

" * * * A caveat to all the world, and in effect an attachment and injunction, * * * and on adjudication, title to the bankrupt's property became vested in the trustee * * * with actual or construc-

tive possession, and placed in the custody of the bankruptcy court." Mueller v. Nugent, 184 U. S. 1, 15, 22 S. Ct. 269, 46 L. Ed. 411; International Bank v. Sherman, 101 U. S. 403, 407, 25 L. Ed. 869.

In Re Williams (D. C.) 53 F.(2d) 486, 487, 488, the court, having for determination the right of the trustee to proceed summarily to recover property of the bankrupt in the actual possession of a state court, said that constructive possession was sufficient to warrant the proceeding; and further said that constructive possession in the trustee, of the property involved, exists where the property was in the physical possession of the debtor at time of filing his petition in bankruptcy, but which was not delivered by him to the trustee; and exists also, "where the property is held by one who makes a claim, but the claim is colorable only."

We conclude from the foregoing authorities and the facts of the case, that the trustee of the estate of Altman-Rodgers Company had the actual possession of the piping and other property involved in this suit, the knowledge thereof being imputable to defendant; and that such possession was not entirely destroyed by the illegal and unauthorized acts of defendant in taking the property into its possession under the reputed sale by Smith, the keeper; that at least, as the court said in Re Williams, supra, the trustee's possession was constructive even though the property had been removed by defendant. He could have maintained a summary proceeding to have compelled its return to the place from which it had been removed. All the rights of the trustee, as regards the property, were vested in plaintiff through the sale to him, among which is certainly included the right to recover actual possession of the property illegally detained by one with colorable title only, or its value. Defendant is not in position to successfully assail plaintiff's title. See M. Feitel House Wrecking Co. v. Oster, 1 La. App. 17.

Defendant's position is not supported by our own laws. Article 2456 of the Civil Code, reads as follows: "The sale is considered to be perfect between the parties, and the property is of right acquired to the purchaser with regard to the seller, as soon as there exists an agreement for the object and for the price thereof, although the object has not yet been delivered, nor the price paid."

Delivery is not essential to the completion of a sale as between the parties thereto. To affect innocent third persons, acquiring rights quoad the property through the owner, delivery is indispensable. Marshall v. Morehouse, 14 La. Ann. 689; Davenport v. Adler, 52 La. Ann. 263, 26 So. 836.

Defendant does not contend, and the petition certainly does not disclose facts to that effect, that its claims to or on the property in question had their origin in or through the trustee.

### On the Merits.

The lower court was not convinced that defendant removed all of the pipe and equipment involved herein, over which Smith was keeper. There are some significant facts appearing in and inferences arising from the testimony which support plaintiff's contentions in this respect, but we do not think these sufficiently strong to overcome the positive denial of defendant's two officers that more than 13,500 feet of the pipe was purchased and removed by it. It is also established that Smith, while selling the pipe, also disposed of other property of the bankrupt, placed in his keeping, and that, too, without authority. It is entirely possible, in fact, probable, that he sold some of the pipe to other persons.

We are not advised as to how the lower court arrived at the conclusion that the pipe defendant admits appropriating was worth only $650. We are convinced all of this pipe was in good condition. It was purchased by Altman-Rodgers Company to convey water for long distances to the site of its road building operations. It had to stand a heavy test to answer to this use. Plaintiff and his witnesses say the 2-inch pipe was worth from 7 to 9 cents per foot, and that the 2½-inch pipe had a value of from 8 to 13 cents per foot. Defendant paid Smith $390 for all it claims to have gotten, which would make an average price of a little less than 3 cents per foot. Its officers say this was all the pipe was then worth. A witness for it places a value on pipe of this character considerably higher than they do. Defendant is engaged in the business of buying and selling secondhand pipe, machinery, etc., and naturally is inclined to low estimates in such matters. We think the record clearly supports an average value of 8 cents per foot for the 13,500 feet removed by defendant, and we fix that value as the

measure of defendant's liability for the unlawful conversion of the property. The measure of damages in an action of trover is the value of the property converted at the time and place of conversion.

Defendant is not entitled to any relief under its alternative demand.

For the reasons herein assigned, the judgment appealed from, in the respect that defendant is condemned to pay plaintiff $650 in default of returning the 13,500 feet of pipe to him or of delivering to him an equivalent amount of used line pipe of grade satisfactory to plaintiff, is amended by increasing said amount to $1,080; and, as thus amended, said judgment is affirmed, with costs.